**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

<u>William Foote</u>

     **v.**                    Case No. 09-cv-171-PB
                            Opinion No. 2010 DNH 149
<u>Town of Bedford, et al.</u>


<u>**MEMORANDUM AND ORDER**</u>

     William Foote sued the Town of Bedford, Michael Izbicki,
Robert Young, Paul F. Roy, Sr., and William Dermody in state
court pursuant to 42 U.S.C. § 1983, alleging that the defendants
retaliated against him for engaging in speech protected by the
First Amendment.  Foote also asserted three state-law claims.
The defendants removed the case to this court and now seek
summary judgment.  For the reasons set forth below, I grant
defendants' motions for summary judgment with respect to the
First Amendment claim and remand the remainder of the case to
state court.


**I.  <u>BACKGROUND</u>**

     Foote served on the Bedford Parks and Recreation Commission,
also known as the Recreation Commission, between May 2005 and
March 2009, and served as its Chairman between March 2008 and

March 2009.  (Izbicki Aff., Doc. No. 11-2, ¶¶ 4, 7; Notice of

Removal Ex. A (hereinafter "Compl."), Doc. No. 1-1, ¶ 10.)

According to the Bedford Town Charter, the responsibilities of

the Commission are (1) to "make recommendations to the Town

Council as to the acquisition, holding, and disposition of real

and personal property pursuant to appropriations authorized by

the budgetary town meeting," (2) to "recommend to the Town

Council all rules and regulations regarding the operation of

recreation facilities," and (3) to "recommend employment of full

or part-time employees to the Town Manager."  (Charter of the

Town of Bedford, Doc. No. 13-1, § 1-11-1(c)(2).)  The Charter

also specifies that "[t]he Recreation Commission shall have all

the powers granted to recreation committees by state law."  (Id.

§ 1-11-1(c)(4).)  Foote's memoranda do not describe the specific

duties he undertook as a member of the Commission.

In March 2009, Foote unsuccessfully ran for a position on

the Bedford School Board.  (Compl., Doc. No. 1-1, ¶ 11.)  During

his election campaign, Foote criticized the School Board.  (Id.

¶ 15.)  After losing the election, he "stated . . . that he was

going to be watching how the School Board handled its oil

contract, rising costs in the state retirement system, and

capital funds."  (Id.)

At some point before his term on the Commission expired, Foote made various comments regarding the development of the Bedford Village Common ("the Village Common").[1]  (See id.) Specifically, Foote (1) "advocated use of impact fees[2] to help develop" the Common, (2) "made comments at a public meeting of the Village Common Committee . . . to the effect that the Committee would not be able to raise funds unless the Town made available $110,000 in impact fees," (3) "opposed the Town Council's plan to revamp the Village Common Committee" and (4) "criticized the Town Council for being unwilling to spend impact fees on the proposed Bedford Village Common."  (Id.)

---

[1] The Village Common is a parcel of land that the Town is attempting to develop into a "special community park" that will be equipped with a bandstand, a natural skating pond and warming hut, and various other amenities.  (Bedford Village Common Development Committee, http://www.bedfordnh.org/pages/BedfordNH_BComm/Common/Index (last visited Aug. 3, 2010).)

[2] The "impact fees" Foote references in his complaint are presumably "recreation impact fees" that the Town collects from its residents based upon the type of home in which they live and the age of the home's residents.  (See Parks and Recreation Commission Minutes, 12/09/2008, http://www.ci.bedford.nh.us/pages/bedfordNH_parksMin/2008/S014EDD D3 (last visited Aug. 3, 2010) (discussing the impact fees paid by families in different types of homes, and noting that during the 12/9/08 meeting, the Commission voted "to recommend to [the] Town Council that $110,000 of the recreation impact fees . . . be appropriated to the Bedford Village Common Park project").

-3-

On or about March 16, 2009, the Town Council voted to appoint two individuals to three-year terms on the Commission, and one individual to a one-year alternate position.  (Compl., Doc. No. 1-1, ¶ 13; Izbicki Aff., Doc. No. 11-2, ¶¶ 15-16.) Foote was not reappointed.  (See Compl., Doc. No. 1-1, ¶ 13.)  At the time, the individual defendants were all members of the Town Council.

## II.  __STANDARD OF REVIEW__

Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The evidence submitted in support of the motion must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

A party seeking summary judgment must first identify the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict

-4-

for it; if that party cannot produce such evidence, the motion must be granted." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323. The opposing party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

## III.   ANALYSIS

### A.   First Amendment Retaliation Claim

Foote alleges that the defendants retaliated against him for engaging in speech protected by the First Amendment when they failed to reappoint him to the Recreation Commission after he criticized the School Board and the Town Council. (Compl., Doc. No. 1-1, ¶ 15.) The defendants respond that Foote is ineligible for the protection he seeks because he was (1) a volunteer and (2) a victim of non-reappointment rather than termination. (See Mem. of Law in Supp. of Town of Bedford's Initial Mot. for Summ. J., Doc. No. 11-1, at 9; Mem. of Law in Supp. of Mot. for Summ. J. of William Dermody, Michael Izbicki, Paul F. Roy, Sr. and Robert Young, Doc. No. 12-1, at 8.) In addition, the Town argues that even if Foote's status as a non-reappointed volunteer does

not bar relief, he is not entitled to First Amendment protection because the Town's interest in providing efficient and effective service outweighs Foote's interest in commenting on issues of town governance.  (See Mem. of Law in Supp. of Town of Bedford's Initial Mot. for Summ. J., Doc. No. 11-1, at 12-14.)

### 1.    Volunteer Status and Non-Reappointment

As an initial matter, I assume, without deciding, that neither Foote's status as a volunteer nor the fact that his claim is based upon non-reappointment rather than termination bars him from receiving relief.  Courts that have concluded that volunteers are protected from termination or non-appointment have analyzed volunteers' claims using the same framework they use to analyze the claims of public employees who make similar allegations.  See Hyland v. Wonder, 972 F.2d 1129, 1136-40 (9th Cir. 1992); Morrison v. City of Reading, No. 02-7788, 2007 WL 764034, at *5-7 (E.D. Pa. 2007).  Following this approach, I analyze Foote's claims using the accepted standard for evaluating a public employee's First Amendment retaliation claim.

### 2.    Speech "as a Citizen" and "on a Matter of Public Concern"

When considering a First Amendment retaliation claim, a court first must examine whether the plaintiff has spoken (a) "as a citizen" and (b) "on a matter of public concern."  Curran v.

Cousins, 509 F.3d 36, 45  (1st Cir. 2007) (citing Garcetti v.
Ceballos, 547 U.S. 410, 418 (2006)).  I assume that Foote's
speech fulfilled both sub-parts of this first requirement, and
move on to the second inquiry, which is dispositive here.

### 3.    Adequate Justification for Dismissal

The second determination a court must make regarding a First
Amendment retaliation claim is "'whether the relevant government
entity had an adequate justification for treating the employee
differently from any other member of the general public.'"  Id.
at 45 (quoting Garcetti, 547 U.S. at 418 (citing Pickering v. Bd.
of Educ., 391 U.S. 563, 568 (1968))).[3]  It is well established
that "'[g]overnment employers . . . need a significant degree of
control over their employees' words and actions; without it,
there would be little chance for the efficient provision of
public services.'"  Id. at 47 (quoting Garcetti, 547 U.S. at
418).  "However, because a citizen who works for the government
is nonetheless a citizen, 'so long as employees are speaking as
citizens about matters of public concern, they must face only
those speech restrictions that are necessary for their employers
to operate efficiently and effectively.'"  Id. (quoting Garcetti,

---

[3] Whether the government had an adequate justification for
treating the plaintiff differently from a member of the general
public is a question of law.  Curran, 509 F.3d at 45.

547 U.S. at 419).   In determining whether the government has an adequate justification for its treatment of the plaintiff, courts conduct what is often referred to as the "Pickering balancing test" and balance "the employee's interests 'as a citizen, in commenting upon matters of public concern[,]' against 'the interest of the [s]tate as an employer, in promoting the efficiency of the public services it performs through its employees.'"   Flynn v. City of Boston, 140 F.3d 42, 47 (1st Cir. 1998) (quoting Pickering, 391 U.S. at 568); see also Davignon v. Hodgson, 524 F.3d 91, 103-104 (1st Cir. 2008).

Applying the Pickering balancing test to the facts of this case, I conclude that defendants did not violate Foote's First Amendment rights in refusing to reappoint him to the Recreation Commission.   I reach this conclusion for several reasons.   First, it is significant that the speech at issue is targeted at the operations of local government.   While citizens have a strong First Amendment interest in commenting on governmental operations, the elected members of the Town Council also have good reason to take account of a speaker's views on local governance issues when they are considering appointments to town boards.   Voters do not have a direct say in appointments and accountability demands that a town's elected representatives be given significant latitude to consider a potential appointee's

-8-

views on local governance issues when acting on behalf of voters.
Conversely, the governmental interest in allowing elected
officials to base  a reappointment decision on speech that is
unrelated to governmental operations is difficult to discern.
Thus, Foote's claim would have far more bite if he had been
denied reappointment because of views he expressed on unrelated
issues.  See <u>Flynn</u>, 140 F.3d at 47 (suggesting that First
Amendment retaliation claim would be stronger if employee were
fired "for expressing adherence to one church or another").

     Second, while Foote has a legitimate interest in commenting
as a citizen on town operations, he has not been denied
reappointment because he blew the whistle on concealed wrongdoing
by town officials.  A different result might well be required in
such a case because the First Amendment interest in the speech at
issue would be correspondingly stronger.  <u>See</u> <u>id.</u> (suggesting
that First Amendment retaliation claim would be stronger if the
employee were fired "for reporting a crime of fraud").

     Finally, it is important to bear in mind that a Recreation
Commissioner is unlike a typical municipal employee because he
has significant policymaking responsibilities.  The Town Charter
expressly requires Commissioners to make recommendations to the
Town Council concerning important matters of recreation policy
such as what properties to acquire, hold, or sell, and what rules

-9-

and regulation should be adopted to govern the operation of the
Town's recreation facilities.  (Doc. No. 13-1, § 1-11-1(c)(2)).
Because the position of Recreation Commissioner is a policymaking
position, the Town has a much stronger interest in considering
the speaker's views on matters of town governance when making an
appointment to the Commission than it has when deciding to hire
an employee for a position with no policymaking responsibilities.
See id.

     Given the nature of Foote's speech and the position he was
seeking, Town officials had legitimate reason to take account of
that speech when considering Foote's request for reappointment.
Foote's critical comments about the School Board were of
particular concern to defendant Young who noted that "'I heard a
lot of complaints about [Foote's] interactions with the [S]chool
[B]oard and then I read in the newspaper [that] he is going to be
watching them[.] . . .  'If we're going to have that interaction
between [the Recreation Commission] and the [S]chool [B]oard,
that kind of attitude doesn't work at all.'"  (Pl. William
Foote's Opp'n to Town of Bedford's Initial Mot. for Summ. J. Ex.
2, Doc. No. 13-2, at 1.)  Ensuring that harmony among individuals
who must continue to work together is not impaired by a
prospective appointee's public statements is a legitimate
interest that the Town can consider when deciding whether to

-10-

reappoint someone to a policymaking position.  <u>Rankin v.</u>
<u>McPherson</u>, 483 U.S. 378, 388 (1987).

The Town Council also has a strong interest in appointing
people to the Recreation Commission whose views on recreation
matters are compatible with its own.  This interest outweighs
Foote's competing interest in reappointment in spite of his
dissenting views on such issues.  As defendant Izbicki noted,
Foote's divergent views on town matters were problematic:  "'I
think [Foote has] done a great job on parks and recreation.  I
think he's a great asset to the town[.]' . . . 'My concern was,
he wasn't representing the [C]ouncil's position on this park
[i.e., the Village Common].'"  (Pl. William Foote's Opp'n to Town
of Bedford's Initial Mot. for Summ. J. Ex. 2, Doc. No. 13-2, at
2.)  Given the Recreation Commission's role in formulating town
policy, the Town Council was entitled to seek out new members for
the Commission whose views about town government are aligned with
its own.  Accordingly, Foote's non-reappointment did not violate
his First Amendment rights.

**B.   <u>State-Law Claims</u>**

Where, as here, a district court has dismissed the claims
over which it had original jurisdiction, the court may exercise
its discretion to decline supplemental jurisdiction as to any
remaining state-law claims.  28 U.S.C. § 1367(c); <u>Marrero-</u>

Gutierrez v. Molina, 491 F.3d 1, 7 (1st Cir. 2007).

## IV.  **CONCLUSION**

For all of the foregoing reasons, I grant both motions for summary judgment (Doc. No. 11; Doc. No. 12) with respect to Foote's federal-law claim (Count I).[4]  What remains of the case shall be remanded to state court.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 13, 2010

cc:  Charles P. Bauer, Esq.
     Brian J. S. Cullen, Esq.
     Beth A. Deragon, Esq.
     Mark A. Stull, Esq.

---

[4] I also deny Foote's request for oral argument because the issues were well briefed and oral argument is unlikely to deepen the court's understanding of the relevant issues.